IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| ROBERT D. BREITMEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14-CV-00343-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | OPINION AND ORDER |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

     Plaintiff Robert Breitmeyer appeals the Commissioner's decision to deny his application for disability insurance benefits under Title II of the Social Security Act, and to deny in part his concurrent application for supplemental security income under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

     Breitmeyer filed concurrent applications under Title II and Title XVI alleging he became disabled beginning November 30, 2000, after suffering a job injury in 1998. Admin. R. 14, 151, 156, 173. Breitmeyer's insured status under the Social Security Act expired on March 31, 2004. Admin. R. 16. He must establish that he became disabled on or before that date to prevail on his Title II claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

-1-    OPINION & ORDER

An ALJ issued a partially favorable decision on Breitmeyer's Title XVI claim, finding that he became disabled in May 2006. The ALJ denied Breitmeyer's Title II claim because Breitmeyer failed to establish that he became disabled before the expiration of his insured status in March 2004. Admin. R. 22. In a previous appeal, this court remanded the adverse portion of the decision to the Commissioner for further proceedings. Admin. R. 479.

A different ALJ then reevaluated Breitmeyer's claim under the sequential disability determination process described in 20 C.F.R. §§ 404.1520 and 416.920, and issued the decision that is now before me on appeal. The period under consideration for this appeal begins at the alleged onset of disability in November 2000. The relevant period runs through March 31, 2004, for his Title II claim and through May 19, 2006, for his Title XVI claim.

The ALJ found that, during the relevant period, Breitmeyer's ability to perform basic work was limited by degenerative disc disease with residual effects of fusion surgery in the cervical spine, a cognitive disorder, and a dysthymic disorder. Admin. R. 395. The ALJ determined that, despite his impairments, Breitmeyer retained the residual functional capacity (RFC) to perform a range of sedentary work with lifting of no more than 10 pounds, standing or walking for a total of four hours during the workday, no overhead bilateral lifting, and limited climbing and postural activities such as kneeling or crouching. In addition, Breitmeyer could perform only simple, routine, repetitive, unskilled work involving low stress and limited contact with the public. The ALJ found that Breitmeyer could perform at an adequate pace for basic work, but could not meet a strict production line work pace. Admin. R. 398.

The vocational expert (VE) testified that a person with Breitmeyer's vocational factors and RFC would be able to perform occupations such as addresser, sorter, and collator operator which

represent hundreds of thousands of jobs in the national economy. Admin. R. 402-403. The ALJ concluded that Breitmeyer had failed to show that he became disabled on or before May 19, 2006. Admin. R. 403.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence need not be a preponderance; it is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if another rational interpretation is also supported. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

I.    **Claims of Error**

Breitmeyer contends the ALJ failed to properly evaluate the evidence of his upper extremity limitations by failing to account for the objective findings and diagnosis of Steven Vander Waal, M.D. He contends this led the ALJ to err at step two of the sequential evaluation, by failing to list upper extremity limitations among his "severe" impairments, and to erroneously reach an RFC assessment that did not include limitations in manipulation. Breitmeyer contends the ALJ erroneously failed to obtain additional evidence regarding his mental impairments. Finally, Breitmeyer contends the ALJ erroneously relied on vocational testimony that contradicted information in the Dictionary of Occupational Titles.

-3-    OPINION & ORDER

## II.    Limitations in the Upper Extremities

Breitmeyer contends the ALJ erred at step two and in his RFC assessment by failing to properly consider his limitations in the upper extremities. At step two, Breitmeyer contends the ALJ should have included limitations in the use of the upper extremities when identifying his severe impairments. At step two, the ALJ's task is simply to determine whether any combination of impairments has more than a *de minimis* impact on the claimant's ability to do basic work activities. Here, the ALJ resolved that question in Breitmeyer's favor and properly continued to the remaining steps of the sequential decision-making process. Accordingly, Breitmeyer has not alleged any harmful error at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (Any error in omitting an impairment from the list of severe impairments at step two was harmless because step two was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 2007 WL 2325018 (9th Cir. 2007) (failure to list impairment as severe at step two was harmless because the limitations posed by the impairment were considered at step four).

In the RFC assessment, the ALJ considered all the evidence of limitations posed by all of Breitmeyer's impairments, including all the evidence Breitmeyer identified regarding symptoms involving his upper extremities. The ALJ found Breitmeyer limited in the ability to reach bilaterally overhead, as reflected in the RFC assessment. In addition, the ALJ acknowledged that Breitmeyer had experienced chronic pain, dysethesias of the right hand, and cervical radiculopathy that could affect his upper extremities. The ALJ found that the evidence supported only transient and mild symptoms. Admin. R. 395. This conclusion was fully supported by the medical opinion of Mary Anne Westfall, M.D., who reviewed all of Breitmeyer's records and found no support for upper extremity limitations. Admin. R. 338-345, 400-401.

-4-    OPINION & ORDER

Breitmeyer contends the ALJ failed to account for the findings of Dr. Vander Waal regarding his upper extremities. This argument has no merit because the ALJ discussed Dr. Vander Waal's findings and reached an RFC assessment that does not conflict with those findings. Dr. Vander Waal examined Breitmeyer in January 2009. He found "no abnormalities of the shoulders, elbows, wrists, or hands." Admin. R. 316. Breitmeyer's grip strength was normal. He had decreased manual dexterity, but no loss of coordination and he was able to grasp objects without difficulty. He demonstrated neither sensory nor motor deficits except "perhaps slight weakness" of the right arm relative to the left. Dr. Vander Waal did not identify any functional limitations or specific work related activities that Breitmeyer could not do. Admin. R. 315-16.

The ALJ gave Dr. Vander Waal's opinion moderate weight. He discounted only Dr. Vander Waal's opinion that Breitmeyer's subjective self-imposed limitations appeared to be reasonable, because he relied on Breitmeyer's subjective statements. The ALJ found Breitmeyer's subjective statements lacking in credibility and Breitmeyer does not challenge that finding. Admin. R. 398. An ALJ may properly discount a medical opinion that is premised on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Moreover, the subjective limitations Dr. Vander Waal accepted, *viz.* lifting up to 10 pounds, sitting or standing up to two hours at a time, and walking up to two miles at a time, did not suggest limitations greater than the RFC assessment. Admin. R. 315, 398. Giving greater weight to Dr. Vander Waal's opinion, as Breitmeyer urges, could not have changed the RFC assessment or helped Breitmeyer's claim. Accordingly, the error Breitmeyer claims, even if he succeeded in showing the error occurred, would be harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (Error is harmless if inconsequential to the determination that the claimant is not disabled); *Burch v.*

*Barnhart*, 400 F.3d at 679 (the court may not reverse the Commissioner's decision for error that is harmless).

I reject Bretimeyer's contention that the ALJ should have included limitations in manipulation when formulating his RFC. Breitmeyer failed to identify evidence of limitations in his ability to manipulate, other than subjective reports that the ALJ properly discounted. In the absence of credible evidence, Breitmeyer failed to satisfy his burden of proving the existence and severity of his alleged impairments in manipulative function. *See Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (Claimant has the burden of showing he is disabled).

## III.    RFC Assessment

Breitmeyer challenges the ALJ's RFC assessment on two additional grounds. First, he contends the ALJ erred by making findings that, in his view, were internally inconsistent. Specifically, Brietmeyer challenges the findings that he is capable of sedentary work but can stand or walk for up to four hours in a work day. Sedentary work, as defined in the regulations, generally involves walking or standing up to one-third of an eight-hour work day, or less than three hours. 20 C.F.R. §§ 404.1567, 416.927. Here, however, the ALJ did not find Breitmeyer's limitations coincided perfectly with the regulatory definition of sedentary work. Instead, he found Breitmeyer's RFC differed from the regulatory definition because he had additional limitations, primarily in mental functions, and was capable of walking or standing for four hours in a day. Admin. R. 397-398. There was no erroneous inconsistency in the ALJ's RFC assessment.

Furthermore, the VE identified occupations in the sedentary range as examples of work a person with Breitmeyer's RFC could perform. Admin. R. 403. Even if Breitmeyer could only stand or walk within the limitations in the regulatory definition of sedentary work, the occupations

-6-    OPINION & ORDER

identified by the VE would still be within his RFC. Accordingly, the inconsistency Breitmeyer alleges would have no consequence in the disability determination. *Molina v. Astrue*, 674 F.3d at 1115; *Burch v. Barnhart*, 400 F.3d at 679.

Second, Breitmeyer contends the ALJ erred in evaluating his mental impairments because he did not obtain another consultative psychological evaluation or medical opinion regarding his limitations in mental functioning. Breitmeyer apparently concedes that the ALJ considered and discussed all of the evidence of mental impairments existing at the time of the decision. The ALJ concluded that this evidence did not support functional limitations in addition to those in the RFC assessment.

The ALJ considered Breitmeyer's treatment records which reflect only intermittent complaints of mental symptoms, and a brief period of treatment that Breitmeyer quickly discontinued. Admin. R. 364. Such a failure to seek or comply with treatment for an allegedly disabling condition reasonably casts doubt on the alleged severity of the condition. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Breitmeyer's physicians did not record persistent complaints of mental symptoms or make objective findings supporting functional limitations from mental impairments. Admin. R. 399. Breitmeyer's submissions to the court do not identify treatment notes contrary to the ALJ's finding or evidence the ALJ neglected to consider. The absence of evidence of impairment is not an error that can be attributed to the ALJ because it is the claimant's burden to show the existence and severity of his impairments. *Clem v. Sullivan*, 894 F.2d at 330.

Despite the dearth of mental health treatment records, the Commissioner obtained a consultative psychological evaluation, conducted by Daryl Birney, Ph. D., in December 2008. Dr. Birney found that Breitmeyer had a flat affect and appeared to be depressed. He had no delusions

-7-    OPINION & ORDER

and was fully oriented. On formal testing, Breitmeyer scored in the low average range on intelligence. He was average on measures of verbal comprehension, arithmetic, attention, and working memory and mildly defective on measures of processing speed, visual scanning, and recognizing missing parts. On the performance section, he was generally average to mildly defective. Dr. Birney did not identify specific functional limitations or work-related activities that Breitmeyer would be unable to do. Admin. R. 305-306.

For opinions on Breitmeyer's specific work-related limitations, the ALJ properly relied on agency reviewing medical experts with expertise and experience in the vocational issues involved in the disability programs under the Social Security Act. After reviewing the entire case file, including Dr. Birney's findings, Sandra Lundblad, Psy.D., found that the evidence supported diagnoses of a cognitive disorder and a dysthymic disorder, resulting in mild limitations of activities of daily living, mild difficulty in maintaining social functioning, and moderate difficulties with concentration, persistence or pace. Admin. R. 321, 323, 330. In specific work-related functions, Dr. Lundblad found moderate limitations in the ability to understand, remember, and carry out detailed instructions and in the ability to plan independently. Admin. R. 334-35. She found no other significant limitations in work-related functions.

In formulating Breitmeyer's residual functional capacity for mental functions, Dr. Lundblad considered the psychological evidence, the medical evidence, Breitmeyer's work history, and the daily activities reported by Breitmeyer and lay witnesses. Admin. R. 336. She opined that the evidence showed Breitmeyer could remember locations and short simple instructions and procedures, carry out short and simple instructions, and concentrate sufficiently to perform simple tasks. Admin. R. 336.

-8-    OPINION & ORDER

As is the normal practice, the agency assigned another medical expert to review the entire case record and Dr. Lundblad's opinion. Kordell Kennemer, Psy. D., found Dr. Lundblad's opinion reasonably reflected the evidence in the case record and agreed with her assessment of Breitmeyer's residual functional capacity for mental functions. He noted that, although Breitmeyer had significant deficits in certain areas, such as processing speed and complex visual memory, he had relative strengths in other cognitive areas with which he could compensate for those weaknesses. Admin. R. 351. The ALJ's RFC assessment does not conflict with the findings of Drs. Birney, Lundblad, or Kennemer and reasonably accounts for all of the evidence in the case record.

Breitmeyer contends, nonetheless, that the ALJ should have ordered an additional consultative evaluation to obtain an additional medical opinion regarding his mental capacity. Further mental evaluation at this juncture would be of dubious value in assessing Breitmeyer's mental capacity at the time his insured status expired over a decade ago. In any event, the ALJ was not required to obtain additional evidence. The ALJ must ensure that the record is fully and fairly developed. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). However, an ALJ need not obtain an additional medical examination unless the ALJ finds the evidence so ambiguous or inadequate that it does not allow for a proper evaluation of the claim. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, neither the ALJ nor the medical experts found the evidence ambiguous or inadequate to evaluate Breitmeyer's functional limitations.

## IV.   Vocational Evidence

Breitmeyer contends the ALJ relied on vocational testimony that was inconsistent with the information in the United States Department of Labor publication *Dictionary of Occupational Titles* (DOT). As noted previously, the vocational expert identified occupations that did not require

activities precluded by Breitmeyer's RFC assessment, including work in the occupational category "Addresser," representing over 800,000 jobs in the national economy. Admin. R. 378-80.

According to the DOT, these jobs involve addressing envelopes, cards, and packages for mailing. A supplemental Department of Labor publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO) includes coded descriptions of the requirements of occupations. The codes associated with the Addresser occupation indicate that frequent reaching is required in such work. SCO, 347 and App. C, C-3. In the SCO, reaching is defined in its broadest meaning, including reaching with the arm or with the hand and in any direction. This reflects that different occupations have reaching requirements that differ in direction and other qualities as well as frequency. For example, some occupations may require frequent reaching forward with the hand, but no reaching overhead or with an outstretched arm. The role of the vocational expert is to provide more specific information than the publications about the requirements of a particular job as it is performed in a particular setting. Social Security Ruling 00-4p. 2000 WL 1898704.

The VE testified that Breitmeyer's specific limitations, including his inability to reach overhead bilaterally, would not diminish his ability to work as an Addresser. Admin. R. 378-80. The SCO description and the VE testimony can reasonably be interpreted in a consistent manner, *i.e.* that the frequent reaching requirement of the SCO description can be accomplished by a worker such as Brietmeyer who can reach frequently in any direction except overhead bilaterally. The ALJ properly relied on the VE in his proper role of applying the general information in the pertinent publications to the specific circumstances of the case before him. There was no conflict in the vocational evidence. Because this interpretation of the evidence is reasonable, the decision must be

affirmed, even if it could be interpreted in a manner more favorable to Breitmeyer. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___12ᵗ___ day of May, 2015.

_____
Robert E. Jones, Senior Judge
United States District Court

-11-    OPINION & ORDER